# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JEREMY BEAIRD,

        Plaintiff,

v.                               Case No:  2:16-cv-430-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## ORDER

Plaintiff Jeremy Beaird seeks judicial review of the denial of his claim for disability and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

## I.    Issues on Appeal[1]

Plaintiff raises two issues on appeal: (1) whether the administrative law judge ("ALJ") properly evaluated the opinions of Plaintiff's treating psychiatrist; and (2) whether substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity ("RFC").

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## II. Procedural History and Summary of the ALJ's Decision

Plaintiff filed an application for SSI on October 24, 2011. Tr. 153-58. Plaintiff alleged that his disability began March 1, 2010 due to bipolar disorder. Tr. 69, 174. Plaintiff's claim initially was denied on January 9, 2012 and upon reconsideration on May 10, 2012. Tr. 92-97, 102-06. Plaintiff requested a hearing before an ALJ and received a hearing before ALJ T. Whitaker[2] on July 22, 2014. Tr. 26, 107-109. Plaintiff appeared and testified at the hearing, during which Plaintiff was represented by counsel. Tr. 26, 31-52. Vocational expert ("VE") Robert L. Lessne appeared by telephone and testified at the hearing. Tr. 26, 52-67.

On October 27, 2014, the ALJ issued a decision finding Plaintiff not disabled since October 24, 2011, the date he filed his application. Tr. 12-21. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 24, 2011, the application date. Tr. 14. At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, anxiety disorder, impulse control disorder, and a history of substance abuse including alcohol, cocaine and cannabis abuse. *Id.* Next, the ALJ concluded that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ then determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, subject to the following limitations:

---

[2] The hearing notices in the record indicate that the hearing was to be held before the ALJ Larry J. Butler. Tr. 121-24. For reasons not specified in the record, the hearing was held before ALJ T. Whitaker instead. Tr. 26.

his work is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; his work is limited to work involving only simple work related decisions and only occasional workplace changes; he is limited to work with no interaction with the public; and he is limited to work with only occasionally [sic] interaction with co-workers and supervisors with no tandem tasks with coworkers and supervisors.

Tr. 16. Subsequently, the ALJ determined that Plaintiff can perform his past relevant work as an industrial cleaner because this work does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 19. Alternatively, the ALJ found that based on Plaintiff's age, education, work experience and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff can perform. Tr. 20. Thus, the ALJ concluded that Plaintiff has not been under a disability since October 24, 2011, the date Plaintiff filed his application. *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on April 1, 2016. Tr. 1-3. Accordingly, the October 27, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on June 2, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Doc. 11.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1),

423(d)(1)(A); 20 C.F.R. § 404.1505(a).[3]  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. §416.920.

The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.  *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*,

---

[3] The Court notes that after Plaintiff filed his application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.  *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016).  The Court will apply rules and regulations in effect at the time of the ALJ's decision, unless regulations specify otherwise. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").  *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of

the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. *Whether the ALJ properly evaluated the opinions of Plaintiff's treating psychiatrist.*

At issue here is the July 2014 opinion of Plaintiff's treating psychiatrist, O.H. Bernadotte, M.D. Doc. 17 at 9-14; Tr. 272-75. Dr. Bernadotte, who practices at Hendry Glades Behavioral Center ("Hendry Glades"), treated Plaintiff from February 2012 to June 2014. Tr. 231-70. Plaintiff's treatment records at Hendry Glades begin on November 4, 2011 when he sought treatment for his depression and mood swings. Tr. 243. Although Plaintiff visited the center prior to November 2011, the record does not contain any treatment notes from previous visits. Tr. 245, 250.

On November 4, 2011, Plaintiff met with Roberta F. Moot, M.S. Tr. 249. Plaintiff reported that he was depressed and paranoid, had mood swings and did not trust anyone. Tr. 243. He noted that he got angry easily and isolated himself. *Id.* With regard to his childhood history, Plaintiff indicated that although his development was normal, he was raised by his mother and step-father, who abused him physically and mentally, and was diagnosed with bipolar disorder when he was a teenager. Tr. 243, 46. Plaintiff reported that he was sent to foster care at the age

of eleven, went through sixteen foster care homes until the age of eighteen and remained not close to anyone. Tr. 244. He also noted that he stopped his high school education in his tenth grade, but later obtained a GED. *Id.* At this time, he indicated that he lived with his boyfriend in safe conditions and was in a good health, although he had problems sleeping. Tr. 243-44. Plaintiff also reported that he watched TV and enjoyed reading and used to play football and video games as a teenager. Tr. 244.

The counsellor indicated that Plaintiff had a sporadic work history. *Id.* Plaintiff noted that he joined the military, but was discharged for medical reasons during the training. *Id.* Nonetheless, Plaintiff had no legal problems and was able to take care of himself. Tr. 245. The counsellor found that he was smart, had a good sense of humor, was a good friend and loved animals. *Id.* Plaintiff indicated that his boyfriend supported him. *Id.* The counsellor noted that during this visit, Plaintiff was open to treatment and also "was fairly open" during the interview. Tr. 249.

During this visit, Plaintiff appeared neat and clean and exhibited an appropriate attitude and normal affect. Tr. 255. Although his mood was anxious and depressed, and his speech was hyper verbal, his motor behavior was normal and he was alert and oriented to person, place, situation and time. *Id.* Plaintiff's thought was organized, and he had coherent thought content. *Id.* Plaintiff had average intelligence and normal memory, despite having poor insight. *Id.* Plaintiff had normal perception and denied any suicidal or homicidal ideation, although he

had impulsive judgment, a medium level of impulsivity and a moderate risk for violence. *Id.*

Furthermore, Plaintiff reported that he started using marijuana and alcohol and had tried cocaine once or twice. Tr. 246. He continued to use marijuana and also smoked tobacco. *Id.* The counsellor noted that Plaintiff was a candidate for outpatient treatment because his substance abuse was mild and he was in the stage of pre-contemplation. *Id.* Based on her observations, the counsellor diagnosed Plaintiff with bipolar disorder and provided a differed diagnosis on Axis II. Tr. 249. The counsellor indicated that Plaintiff was isolated and needed financial help and medications. *Id.* She noted that Plaintiff's Global Assessment of Functioning ("GAF")[4] score was 52.[5] She recommended Plaintiff for a psychological evaluation. *Id.*

Dr. Bernadotte first examined Plaintiff on February 2, 2012. Tr. 250-54. Dr. Bernadotte noted that Plaintiff had a long history of mental illnesses dating back to his childhood, including attention-deficit/hyperactivity disorder, mood swings, paranoid ideation, irritability and anxiety. Tr. 250. Plaintiff reported that he was admitted to a psychiatric hospital when he was sixteen years old. *Id.* Dr. Bernadotte indicated that Plaintiff had sought treatment at Hendry Glades first in 2005 and later in 2009, but eventually stopped his treatment. *Id.* Plaintiff

---

[4] GAF is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) ("DSM IV").

[5] A GAF score of 51 to 60 indicates moderate symptoms or impairments in social, occupational or school functioning. *See* DSM IV.

returned for treatment because he continued to have mood swings, paranoid ideation, difficulty sleeping and anxiety.  *Id.*

Plaintiff reported that he had tried various psychiatric medications, such as Prozac and Wellbutrin, and denied making any suicidal attempts.  *Id.*  He noted his history of marijuana, cocaine, alcohol and acid, although he denied any substance abuse at this time.  Tr. 251.  In addition to Plaintiff's childhood history described above, Dr. Bernadotte indicated that Plaintiff "ha[d] no history of being employed," and was living with a male roommate, who was helping him financially.  *Id.*  Plaintiff reported that he currently was not taking any medications.  Tr. 253.

During this visit, Plaintiff appeared his stated age and appropriately dressed and groomed and was alert and cooperative.  Tr. 252.  He maintained good eye contacts, and his speech was articulate and goal-directed with normal tone, rate and volume.  *Id.*  Although Plaintiff's mood was anxious and depressed, his affect was appropriate to ideation and situation.  *Id.*  Plaintiff admitted having some paranoid ideation, thinking that people were looking at and talking about him.  *Id.*  Nonetheless, Plaintiff denied any auditory or visual hallucinations, and his intelligence was clinically average.  *Id.*  His insight and judgment were fair, and he was aware of his emotional condition and was seeking help at this time.  *Id.*

Dr. Bernadotte diagnosed Plaintiff with bipolar disorder not otherwise specified and anxiety disorder not otherwise specified and a history of alcohol abuse and cocaine abuse and provided a deferred diagnosis on Axis II.  Tr. 241, 253.  He noted that Plaintiff was unemployed, had a long history of emotional problems and

lacked social support.   Tr. 253.   Dr. Bernadotte noted that Plaintiff's GAF score was 51.   *Id.*   He recommended that Plaintiff take a mood stabilizer, an anti-psychotic medication and a sleeping aid.   *Id.*   Dr. Bernadotte asked Plaintiff to return in six weeks.   *Id.*   The ALJ considered and assigned substantial weight to Dr. Bernadotte's GAF score of 51 because "it derive[d] from a treating source."   Tr. 18.

Plaintiff returned to Dr. Bernadotte on March 30, 2012.   Tr. 242.   Plaintiff reported that he was experiencing no side effects from the medications and had fewer mood swings and angry outbursts, although he still was having difficulty falling asleep at times.   *Id.*   Plaintiff noted that he was feeling much better.   *Id.*   During this visit, Plaintiff appeared neat, clean and cooperative and had normal affect and a stable mood.   *Id.*   Plaintiff's motor behavior was normal, and his speech was articulate.   *Id.*   Dr. Bernadotte opined that Plaintiff's thought process was organized, and his thought content was coherent and logical.   *Id.*   Plaintiff's judgment was age-appropriate, and his memory and perception were normal.   *Id.*   Plaintiff also exhibited average intelligence and fair insight and was alert and oriented to person, place, situation and time.   *Id.*   Plaintiff did not pose any homicidal or suicidal risks and showed a low risk for violence, although he had a medium level of impulsivity.   *Id.*   Dr. Bernadotte adjusted Plaintiff's medications and ordered another follow-up appointment in eight weeks.   *Id.*

On May 24, 2012, Plaintiff reported to Dr. Bernadotte that he was doing well with his medications and experienced no side effects.   Tr. 236.   Dr. Bernadotte indicated no change in Plaintiff's condition from the previous visit, except that

Plaintiff had a low level of impulsivity and normal insight. *Id.* Dr. Bernadotte reported that Plaintiff's mood was stable, his anxiety was "fairly under control" and he was sleeping well with medications. *Id.*

Plaintiff next saw Dr. Bernadotte on August 16, 2012. Tr. 235. Plaintiff reported that although he was sleeping with medication and had no side effects from his medications, he had low anxiety around people and some paranoid thoughts. *Id.* Dr. Bernadotte opined that Plaintiff experienced delusions, despite having fair insight. *Id.* The doctor adjusted Plaintiff's medications and scheduled another follow-up visit in twelve weeks. *Id.* Dr. Bernadotte indicated no further changes in Plaintiff's condition. *Id.*

On November 8, 2012, Plaintiff noted to Dr. Bernadotte that he continued to do well with his medications, had no side effects and was sleeping well. Tr. 234. Dr. Bernadotte opined that Plaintiff was not experiencing any acute psychosis and had a stable mood. *Id.* Plaintiff's perception was normal without any delusions. *Id.* Otherwise, Dr. Bernadotte indicated no changes. *Id.*

On January 31, 2013, Plaintiff once again reported experiencing mood swings, but denied any hallucinations. Tr. 233. Plaintiff reported for the first time having hand tremors as a side effect of his medications. *Id.* Based on Plaintiff's report, Dr. Bernadotte adjusted Plaintiff's medications and added a medication to stop Plaintiff's hand tremors. *Id.* Dr. Bernadotte rated Plaintiff's impulsivity level as medium and noted that Plaintiff had a restricted affect. *Id.* Dr. Bernadotte's opinion remained otherwise the same as one from the previous visit. *Id.*

On April 11, 2013, Dr. Bernadotte noted that Plaintiff was doing okay and had minimal hand tremors and a stable mood. Tr. 232. Plaintiff was sleeping "okay" with medications. *Id.* Dr. Bernadotte's opinion from this visit was substantially similar to the previous one, except that Plaintiff's affect was normal again. *Id.* Plaintiff's August 29, 2013 follow-up visit was equally unremarkable, and Dr. Bernadotte noted that Plaintiff's mood was stable and he was sleeping well. Tr. 231. Plaintiff's impulsivity level was decreased to a low level. *Id.*

On November 21, 2013, Plaintiff reported to Dr. Bernadotte that he was doing okay and experienced no side effects from his medications, although he was waking up at two-hour intervals throughout the night. Tr. 267. Dr. Bernadotte observed that Plaintiff's mood was fairly stable, and he prescribed a new medication, Remeron, to add to Plaintiff's medication regimen. *Id.* Except that Plaintiff's affect was restricted, Dr. Bernadotte's findings were otherwise consistent with the doctor's previous ones. *Id.*

At Plaintiff's two subsequent appointments with Dr. Bernadotte on February 13, 2014 and June 10, 2014, Plaintiff reported that he was doing well on his medications, sleeping well and had no reported complaints. Tr. 265-66. On both occasions, Plaintiff's mood was stable, although he exhibited a restricted affect. Tr. 265-66. Plaintiff also exhibited slowed speech on June 10, 2014. Tr. 265. Dr. Bernadotte's opinions from these visits were otherwise unremarkable and substantially similar to the previous ones. Tr. 265-66.

On July 3, 2014, Dr. Bernadotte completed a questionnaire regarding Plaintiff's mental RFC. Tr. 272-75. Dr. Bernadotte opined that Plaintiff has moderate[6] impairments in all aspects of his social interaction, including his abilities to accept instructions from or respond appropriately to criticism from supervisors or superiors, work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes, respond appropriately to co-workers or peers, relate to the general public and maintain socially acceptable behavior. Tr. 272-73. Dr. Bernadotte indicated, however, that his answers would change if only minimal contact or interaction with others is required because Plaintiff "would do better with minimal stress." Tr. 273.

With respect to sustained concentration and persistence, Dr. Bernadotte opined that Plaintiff is moderately impaired in his abilities to process subjective information accurately, use appropriate judgment, carry through instructions, complete tasks independently, maintain attention and concentration for more than brief periods of time and perform at production levels expected by most employers. Tr. 273-74. Dr. Bernadotte further opined that Plaintiff has markedly[7] impaired abilities to perform and complete work tasks in a normal work day or week at a consistent pace and to work in cooperation with or in proximity to others without being distracted by them. Tr. 273.

---

[6] A moderate degree of impairment was defined on the form as "[u]nable to function in this area from 11% to 25% of the work day or week." Tr. 272.

[7] A marked degree of impairment was defined on the form as "[u]nable to function in this area from 26% to 50% of the work day or work week." Tr. 272.

In the area of adaptation, Dr. Bernadotte opined that Plaintiff has no limitations in being aware of normal hazards, taking necessary precautions or maintaining personal appearance and hygiene. Tr. 274. Dr. Bernadotte opined that Plaintiff has moderately impaired abilities to respond appropriately to changes in a work setting and remember locations and workday procedures and instructions. *Id.* He further opined that Plaintiff has marked impairments in his abilities to behave predictably, reliably and in an emotionally stable manner and tolerate customary work pressures. *Id.* Dr. Bernadotte noted that Plaintiff's condition is likely to deteriorate if he is placed under stress, particular that of a job, because of Plaintiff's mood disorder. Tr. 275. The doctor further opined that although Plaintiff could manage his own funds, Plaintiff's impairments have lasted or are expected to last twelve months or more. *Id.*

After the ALJ fully discussed Dr. Bernadotte's treatment notes in her decision, the ALJ accorded mixed weight to Dr. Bernadotte's RFC assessment as follows:

> Dr. Bernadotte opined [Plaintiff] possessed moderate limitations in responding appropriately to co-workers/peers/the public, carrying out instructions, maintaining attention/concentration, performing at production levels, and responding appropriately to work-setting changes. The undersigned assigns substantial weight to these parts of Dr. Bernadotte's opinions, since they are consistent with the medical records from Hendry Glades [] and the opinion of the consultative examiner. Dr. Bernadotte also concluded [Plaintiff] was markedly restricted in his ability to perform/complete work tasks in a normal workday/workweek at a consistent pace, to work in cooperation with or in proximity of others, and to behave in an emotionally stable manner. The undersigned accords little weight to these portions of Dr. Bernadotte's medical opinions, since they are so restrictive that they are not supported by the medical evidence as a whole, other medical opinions, or the nature and extent of [Plaintiff's] activities and social functioning described throughout the decision. Of note, a medical record

reflected [Plaintiff's] hand tremors were merely minimal (see page 3 of Exhibit 2F), and therefore do not cause any significant functional or work-related limitations (Exhibits 2F, 3F, 4F, and 5F). Thus, I find that hand tremors are not established as a severe impairment.

Tr. 18.

Plaintiff contends that the ALJ erred by rejecting portions of Dr. Bernadotte's RFC assessment. Doc. 17 at 9-14. The Commissioner responds that the ALJ properly considered and weighed the opinion. Doc. 18 at 6-15. The Court finds that the ALJ properly considered Dr. Bernadotte's RFC assessment, and substantial evidence supports this decision.

First, Dr. Bernadotte provided his opinion by completing a form questionnaire. Tr. 272-75. Form questionnaires or so-called "checklist" opinions, such as that completed by Dr. Bernadotte, generally are disfavored. *Hammersley v. Astrue,* No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.,* 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

Furthermore, Dr. Bernadotte assessed Plaintiff's mental RFC, which is not a medical opinion, but an issue reserved for the Commissioner. Tr. 272-75. RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. §

404.1527(d)(2). The Eleventh Circuit has held that "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). The regulations provide that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." 20 C.F.R. § 404.1527(d)(2). Accordingly, the Court finds that the ALJ was not required to assign any particular weight to Dr. Bernadotte's mental RFC assessment. Tr. 272-75.

In addition, the Court finds that substantial evidence supports the ALJ's reasons for rejecting Dr. Bernadotte's findings of Plaintiff's marked mental impairments. Tr. 18. Dr. Bernadotte consistently noted that Plaintiff responded well to his medications, slept well and had a stable mood. Tr. 231-32, 234, 236, 265-66. Throughout the course of his treatment, Dr. Bernadotte indicated that Plaintiff was neat, clean and cooperative and had normal motor behavior and articulate speech. Tr. 231-36, 242, 266-267. Furthermore, Plaintiff had organized thought process and coherent and logical thought content. Tr. 232-33, 235-36, 242, 266-267. In addition, Dr. Bernadotte found that Plaintiff's judgment was age-appropriate, and his memory and perception were normal. Tr. 231-34, 236, 242, 266-267. Plaintiff consistently demonstrated average intelligence and fair or normal insight and was alert and oriented to person, place, situation, and time. Tr. 231-36, 242, 266-267. Plaintiff's impulsivity level consistently was rated as low. Tr. 231, 234-36, 266-267. Dr. Bernadotte's unremarkable findings support the ALJ's decision to accord little

weight to Dr. Bernadotte's opinion that Plaintiff has marked mental impairments.
Tr. 18.

Furthermore, the evaluation of Nancy Kelly, Psy.D., who performed a consultative examination of Plaintiff on January 5, 2012, supports the ALJ's findings. Tr. 226-29. The ALJ discussed Dr. Kelly's evaluation as follows:

> Dr. Kelly consultatively examined [Plaintiff] in January of 2012, and assessed [Plaintiff] with an impulse control disorder as well as an anxiety disorder. [Plaintiff] reported he was able to accomplish activities of daily living independently, care for his dog, to read, watch football, and to perform chores. [Plaintiff's] statements evidenced [Plaintiff] was able to function and to concentrate within the assessed [RFC]. In addition, [Plaintiff] exhibited a cooperative demeanor, unremarkable motor behavior, fluent clear speech, adequate expressive/receptive language skills, coherent/goal-directed thought processes, a full range of affect, appropriate thought content, clear sensorium, and only mildly impaired memory functions. Dr. Kelly also observed [Plaintiff] related well. Dr. Kelly's objective observations established [Plaintiff] was basically able to mentally function and to interact. Furthermore, Dr. Kelly opined [Plaintiff] possessed a [GAF score] of 60, which indicates moderate symptoms. This GAF score buttresses the undersigned's contention that [Plaintiff] has moderate concentration and social functioning difficulties. Dr. Kelly opined that [Plaintiff] is able to follow and understand simple directions and perform simple tasks independently; he is able to maintain attention and a regular schedule; he is able to learn new tasks; he may have moderate difficulty performing complex task independently and moderate difficulties making appropriate decisions; and he may have moderate difficulties relating adequately with others and moderate difficulties relating adequately with others; and he may have moderate difficulty dealing appropriately with stress. The undersigned gives significant weight to Dr. Kelly's medical opinions, since it is consistent with Dr. Kelly's observations and the other evidence (Exhibit 1F).

Tr. 17-18. The ALJ correctly noted that Dr. Kelly's evaluation is consistent with Dr. Bernadotte's findings of moderate impairments. Tr. 18. Based on the findings

above, the Court finds that substantial evidence supports the ALJ's analysis of Dr. Bernadotte's RFC assessment.

> b. *Whether substantial evidence supports the ALJ's determination of Plaintiff's RFC.*

Plaintiff argues that the ALJ erred by not sufficiently incorporating Plaintiff's moderate mental limitations into the ALJ's RFC assessment and not properly assessing the VE's testimony. Docs. 17 at 14-17, 21 at 1-4. The Commissioner responds that substantial evidence supports the ALJ's RFC assessment. Doc. 18 at 15-19. The Court finds that the ALJ properly assessed Plaintiff's RFC and the VE's testimony.

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether he can return to his past relevant work are considered in determining his RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, the Court finds that the ALJ sufficiently accounted for Plaintiff's mental impairments. As noted, the ALJ accorded substantial weight to Dr. Bernadotte's

findings of Plaintiff's moderate limitations in the areas of social interaction, sustained concentration and persistence and adaptation, specifically in "responding appropriately to co-workers/peers/the public, carrying out instructions, maintaining attention/concentration, performing at production levels, and responding appropriately to work-setting changes." Tr. 18. The ALJ accounted for these limitations by including the following limitations in her RFC assessment:

> his work is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; his work is limited to work involving only simple work-related decisions and only occasional workplace changes; he is limited to work with no interaction with the public; and he is limited to work with only occasionally interaction with co-workers and supervisors with no tandem tasks with coworkers and supervisors.

Tr. 16.

First, the limitation to simple, routine and repetitive tasks sufficiently accounts for Plaintiff's moderate limitations in the area of sustained concentration and persistence. *Id.* The Eleventh Circuit has held, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180 (citations omitted). Accordingly, the Eleventh Circuit routinely has found that "a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks." *Davis v. Comm'r of Soc. Sec.*, 11 F. Supp. 3d 1154, 1167 (M.D. Fla. 2014) (citations omitted);

*see Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1180); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876-77 (11th Cir. 2012); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 n.1 (11th Cir. 2011).

Similarly, the ALJ's limiting Plaintiff to only simple work-related decisions, occasional workplace changes, no interaction with the public and occasional interaction with co-workers and supervisors sufficiently accounts for Plaintiff's limitations in social interaction and adaptation. Tr. 16; *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) (holding that the ALJ took account of the claimant's moderate limitations in social functioning by limiting the claimant to jobs with only occasional interaction with the general public and coworkers); *Sheldon v. Comm'r of Soc. Sec.*, No. 8:15-cv-1831-T-JSS, 2016 WL 4120444, at *4-*5 (M.D. Fla. Aug. 3, 2016) (holding that the ALJ sufficiently accounted for the state agency psychologist's opinion that the plaintiff has moderate limitations in adapting to changes in the workplace by restricting the plaintiff's RFC to adapting to gradual changes in the work setting); *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 843 (11th Cir. 2013) ("While the ALJ's RFC assessment and hypothetical to the VE did not use the same language as [the physician], they both accounted for such limitations.").

The Court also finds that the ALJ properly asked a hypothetical question to the VE. Tr.19-20, 53-68. Step four of the sequential evaluation process requires the ALJ to determine whether the claimant's RFC allows him to perform any of his

past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden of showing that his past work experience is not past relevant work. *Barnes*, 932 F.2d at 1359; *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990)). The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite his impairment. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). To support a conclusion that the claimant is able to return to his past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of his impairments. *See Lucas,* 918 F.2d at 1574. An ALJ may consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2). "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quotation marks omitted).

Here, the ALJ chose to obtain the VE's testimony and determined that Plaintiff could perform his past relevant work as an industrial cleaner, or in the alternative, that there are a significant number of jobs in the national economy Plaintiff could perform. Tr. 19-20. In her decision, the ALJ discussed that:

> The [VE] testified a person with [Plaintiff's] medical/vocational/educational/age profile and current [RFC] would be able to perform [Plaintiff's] past work as a cleaner, industrial. Based on the testimony from the [VE] and, also a comparison between [Plaintiff's] past relevant work and the assessed [RFC], the undersigned finds that [Plaintiff] could perform [h]is past relevant work as [a] cleaner, industrial within the assessed [RFC] as generally performed in the national economy.

Tr. 19.

The ALJ described the VE's testimony in detail as follows:

> To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a mail clerk with DOT# 209 687 026 svp 2, light exertion with 68,345 jobs found in the national economy, a surveillance system monitor with DOT# 379 367 010 svp 2, sedentary exertion with 16,055 jobs existing in the national economy, and a floor waxer with DOT# 381687034 svp 2. medium exertion with 22,059 jobs in the national economy.

> Pursuant to SSR 00-4p, the undersigned has determined that the [VE']s testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT). The [VE] testified that his opinions were consistent with the information addressed by the DOT and those portions of his opinion, such as off task time, that are not addressed in [the] DOT were based on his professional experience and experiences which included various studies. It is noted that the [RFC] asked of the vocational expert included limitations for off task time and absenteeism that are not included in the above ultimately assessed [RFC] because of the absence of persuasive supporting evidence. I logically and reasonably infer that the removal of the limitations regarding off task time and absenteeism from the assessed [RFC] would not further reduce the occupational base. Thus, I reasonable infer that [Plaintiff] could still perform his past relevant work as a cleaner, industrial and, alternatively, [Plaintiff] could adjust and perform the aforementioned work of a mail clerk, surveillance system monitor, and floor waxed within the above [RFC].

Tr. 20.

During the hearing, the ALJ asked a hypothetical question to the VE, which comprised of the RFC limitations included in her decision and two additional limitations: *on average*, being off-task 10 percent of the workday in addition to regularly scheduled breaks and being absent from work once per month. Tr. 54-55. At first, the VE answered that a hypothetical person with the above limitations could

perform his past relevant work as an industrial cleaner.  Tr. 55.  The VE also testified that there are other jobs in the national economy this hypothetical person could perform, such as a mail clerk, a surveillance system monitor and a floor waxer. Tr. 55-56.

Subsequently, Plaintiff's counsel asked the VE whether a hypothetical person with the RFC limitations determined by the ALJ could perform work if he has to be off-task 10 percent of the workday and absent from work once per month *on a consistent basis*.  Tr. 57-58.  The VE then responded that this person could not perform work as an industrial cleaner or find other jobs in the national economy because employers would not tolerate this off-task time and absenteeism.  Tr. 59, 62. The ALJ clarified the VE's responses as follows:

> ALJ: Okay. But it's your professional -- notwithstanding what the literature says, it's your professional opinion, based on your education, training, and experience in your field, that my hypothetical person could not do the stock clerk or the cleaner, industrial.
>
> VE: That is correct.
>
> ALJ: And would it likewise be your professional opinion, based on your training, experience, and education, that my hypothetical person with that combination of off-task time on average at [10] percent and . . . one absence per month on average -- that that would also preclude the work as a mail clerk, a surveillance system monitor, and a floor waxer?
>
> . . .
>
> VE: . . . Well, I just don't think the person would be tolerated, no.
>
> . . .
>
> ALJ: Okay. What is, specifically, your opinion -- well, let me rephrase that -- it's your opinion, sir, that the reason they can't do the past work and any other work in our competitive work economy is the combination

of limitations to work that allows them to be off-task, on average, 10 percent of the workday and also work that allows them, on average, to be absent once per month. Is that correct? So it's a combination -- that combination of limitations?

VE: Yes. . . .

Tr. 60, 62-63.

As the hearing transcript reveals, and the ALJ explicitly acknowledged in her decision, "the [RFC] asked of the [VE] included limitations for off task time and absenteeism that are not included in the above ultimately assessed [RFC] because of the absence of persuasive supporting evidence." Tr. 20. Nonetheless, the VE clarified that the combined limitations of being off task and absent from work are what precluded a hypothetical person with the RFC limitations assessed by the ALJ from performing Plaintiff's past relevant work or other jobs in the national economy. Tr. 62-63. Accordingly, the ALJ accurately determined that:

> I logically and reasonably infer that the removal of the limitations regarding off task time and absenteeism from the assessed [RFC] would not further reduce the occupational base. Thus, I reasonabl[y] infer that [Plaintiff] could still perform his past relevant work as a cleaner, industrial and, alternatively, [Plaintiff] could adjust and perform the aforementioned work of a mail clerk, surveillance system monitor, and floor waxed within the above [RFC].

Tr. 20.

To rebut the ALJ's findings, Plaintiff relies on Dr. Bernadotte's findings of moderate impairments to which the ALJ accorded substantial weight. Docs. 17 at 16, 21 at 1-4; Tr. 18. Plaintiff inaccurately describes, however, Dr. Bernadotte's findings of moderate impairments as more work-preclusive than being off task for 10 percent of the workday, arguing than moderate impairments would require Plaintiff

to be off task more than 10 percent of the workday. Docs. 17 at 16, 21 at 1-4. In contrast, the form questionnaire completed by Dr. Bernadotte defined a moderate impairment as an inability to "function *in this area* from 11% to 25% of the work day or week," and did not specify that an inability to function in one particular area would require a person to be off task or absent from work. Tr. 272 (emphasis added). Neither did Dr. Bernadotte provide any opinion on whether Plaintiff's mental impairments would cause him to be off task or absent for a specific period of time. Tr. 272-75.

Rather, the ALJ properly exercised her discretion not to include limitations for being off task and absent from work once per month in Plaintiff's RFC "because of the absence of persuasive supporting evidence." Tr. 16, 20. As noted, RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *Beegle*, 482 F. App'x at 486 ("A claimant's [RFC] is a matter reserved for the ALJ's determination."). Accordingly, the Court finds that the ALJ properly assessed Plaintiff's RFC and the VE's testimony because the ALJ properly excluded limitations for being off task and absent from work in assessing Plaintiff's RFC, and the VE testified that without these combined limitations, a hypothetical person with Plaintiff's RFC could perform his past relevant work or other jobs in the national economy.

## V.    Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner be **AFFIRMED**.

2.     The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 23rd day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record